CARMINE PERCELLO, APPELLANT, v. OCEAN GROVE
CAMP MEETING ASSOCIATION OF THE METHODIST
EPISCOPAL CHURCH, RESPONDENT.

Submitted June 6, 1924—Decided October 20, 1924.

On appeal from the Supreme Court, in which the following
*per curiam* was filed:

"The question raised in this case is whether the Ocean
Grove Camp Meeting Association could legally and consti-
tutionally enact an ordinance relating to the licensing of
trades, businesses, occupations and employments in Ocean
Grove. Such an ordinance was passed and approved on Janu-
ary 19th, 1923, and the prosecutor, having failed or neglected
to take out a license as required thereby, was sued for a pen-
alty in the District Court of the First Judicial District of
Monmouth county. Before the suit was tried he applied for
and obtained the present writ, and as the attack made is
upon the jurisdiction of the defendant to enact any such or-
dinance at all, and it consequently goes to the entire ordi-
nance, the award of *certiorari* before conviction was proper.

"The territory over which the Ocean Grove Camp Meeting
Association claims jurisdiction is within the boundaries of
the township of Neptune. That township has a licensing or-
dinance also, and the prosecutor took out the desired license
[which was to sell ice-cream cones] from the township au-
thorities, and paid the fee for the same. This ordinance was
passed under an act entitled 'An act respecting licenses in in-
corporated camp meeting associations,' which provides, among
other things, that the board of trustees, directors or managers
of any camp meeting association heretofore incorporated
under the laws of this state shall have power to make, en-
force, amend and repeal ordinances to license and regulate
various trades and industries, including peddlers and itin-
erant venders of merchandise. No question is raised but that
the business of the prosecutor is covered by the purview of

this act. The ordinance above referred to, as passed January 19th, 1923, specifically covers the business of dispensing ice-cream cones.

"The reasons seem to be all directed to the power of the legislature to authorize the association to enact such an ordinance. They may be epitomized as follows: That the statute is unconstitutional as a special law respecting the internal affairs of Neptune township, and as also granting to the camp meeting association, as a private corporation, certain exclusive privileges; that it is, in effect, a delegation of police powers to a private association; that it purports to attach a religious test to municipal franchises; that the classification of camp meeting associations is illusory. Other reasons assigned are that the original charter of the association in 1870 conferred no licensing powers; that the township of Neptune has exclusive powers; that two municipal corporations cannot occupy the same space at the same time; that the territory called Ocean Grove was never incorporated; that the charter of 1870 was repealed in 1879, and that any attempt to restrict the municipal powers of the township of Neptune is unconstitutional and void.

"We incline to think this last reason is hardly pressed with seriousness. As to the others, the fundamental idea underlying all of them that are worthy of consideration is that camp meeting associations are not a legitimate class of municipalities with respect to which legislation purporting to be general municipal legislation can be enacted.

"If this be so, it seems strange that the invalidity and unconstitutionality of legislation affected camp meeting associations as a class have not been discovered before. They have been treated by the legislature as a class in municipal legislation for many years, in fact, since just after the constitution of 1875. *Comp. Stat.*, p. 354, &c. In 1878 there was an act giving license powers to camp meeting associations (*Comp. Stat.*, p. 358), including hucksters and peddlers of merchandise and provisions. This act was attacked in the case of *Grover* v. *Ocean Grove Camp Meeting Asso.*, 45 N. J. L. 399, but it is noticeable that the attack was not based on any question of special legislation, and went solely to the

powers contained in the body of the act in relation to liquor licenses, and this on the ground that the title of the act did not cover that point; and this was what the court decided. Later, in 1887, came an act with regard to licensing of vehicles in camp meeting associations. *Comp. Slat., p.* 362. In 1894 there was enacted another act conferring certain powers of government on the managers of camp meeting associations, by section 8 of which (*Comp. Stat., p.* 364) it is provided that every such board of trustees, directors or managers shall have full power and authority to make, establish and enforce ordinances regulating the granting of all licenses and fixing the fees to be paid therefor, which, by any laws of this state now in force or hereafter passed, they may have authority to grant, and to fix and prescribe penalties for the violation of such ordinances, &c. This act was considered by this court in the case of *Slocum* v. *Camp Meeting Asso.,* 59 *N. J. L.* 110, and, again, it is noticeable that the question discussed, and. substantially, the only question was whether the association could delegate to a magistrate the power to fix a fine for the infraction of an ordinance requiring a license to sell fruit. There seems to have been no hint on the part of either counsel or the court that the statute itself was an infraction of the constitution.

"So far as relates to the status of Ocean Grove as a municipal corporation, we need go no further than to quote the language of the present Chief Justice in *McCran* v. *Ocean Grove,* 96 *N. J. L.* (at *p.* 161), where it was said that that corporation by its charter was constituted a body corporate and politic.

"As an abstract proposition, we think there is little or no merit in the attack on the constitutional status of the act now under consideration. But even if we were inclined to think it somewhat vulnerable in that regard, the existence of other acts *in pari materia* unchallenged for a period of nearly fifty years, should clearly turn the scale in favor of its support. *Butler* v. *Commonwealth Tobacco Co.,* 74 *N. J. Eq.* 423: *Commonwealth Roofing Co.* v. *Riccio,* 81 *Id.* 486, 489, and cases cited.

"The writ will be dismissed."

For the appellant, *Richard. W. Stout* and *Charles E. Cook.*

For the respondent, *Robert H. McCarter.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ. 14.

*For reversal*—None.