**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2286-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ROCIO SANCHEZ-ROJAS,

    Defendant-Respondent.

_____

> Argued July 19, 2022 – Decided August 19, 2022
>
> Before Judges Sabatino and Susswein.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 21-017.
>
> Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).
>
> David J. Foley, III, argued the cause for respondent.

PER CURIAM

After the municipal court granted defendant Rocio Sanchez-Rojas's application to exclude the Alcotest results from her DWI (driving while intoxicated) case for lack of foundational support, and the State did not move for leave to appeal that evidentiary ruling, the trial proceeded to its completion. Based upon the arresting police officer's testimony of his observations of defendant's insobriety, the judge found defendant guilty of violating N.J.S.A. 39:4-50. The judge entered a final judgment of conviction, and sentenced defendant to various sanctions.

Defendant appealed her observation-based DWI conviction to the Law Division. The State did not attempt to cross-appeal the municipal judge's evidentiary ruling.

On appeal, the Law Division agreed with the municipal court that the State had proven defendant's guilt of DWI beyond a reasonable doubt, based on the officer's credible observation evidence. However, the Law Division remanded the case, sua sponte, to the municipal court for reconsideration. It did so because it independently found the municipal court had erred in excluding the Alcotest results from the evidence at trial, thereby relieving defendant of possibly more stringent sanctions for committing a "per se" DWI violation, which can be proven by blood alcohol test results alone. See N.J.S.A. 39:4-50(a)(1)(ii).

Defendant moved for reconsideration of the remand order, which the Law Division denied.

Joined by defendant, the State moved for leave to appeal the Law Division's remand order, arguing the order is contrary to case law principles constraining appellate jurisdiction of criminal and quasi-criminal convictions. We granted leave to appeal and considered the parties' joint arguments.

Having done so, we vacate the remand order because: (1) the State did not appeal the municipal court's suppression of the Alcotest evidence; and (2) a remand exposing a defendant-appellant in the Law Division, post-judgment, to potentially greater sanctions based on evidence that had been excluded at trial from the prosecution's case is contrary to the principles set forth in State v. DeBonis, 58 N.J. 182, 188 (1971), and other case law.

We affirm defendant's conviction of the observation-based DWI offense. We further remand this matter to the Law Division to complete its de novo review of defendant's sentence.

I.

We confine our brief discussion of the facts and procedural history to the record developed by the parties and the evidence admitted at the municipal court trial.

3

The municipal trial began on February 16, 2021. Officer John Lynch of Avon-by-the-Sea (Avon) Police Department testified first on behalf of the prosecution. Officer Lynch testified that on Saturday, February 29, 2020, at approximately 2:45 a.m., he was driving on patrol when defendant's car passed him traveling at "an excessive rate of speed." According to Officer Lynch, defendant "was going very above the speed limit" of thirty miles an hour. He pulled defendant over after she had crossed the bridge from Avon into Belmar.

According to Officer Lynch, as he approached defendant's car on foot, he "could smell an overwhelming smell of alcohol coming from the vehicle." He asked defendant, whom he identified in court, for her license, registration, and proof of insurance. Officer Lynch noticed that defendant seemed "very confused," and "[h]er eyes were watery and her eyelids definitely were drooping." She was "slow in her movements when trying to gather her documents[.]"

Officer Lynch testified that he believed that defendant understood English sufficiently to understand and follow his instructions. She was able to give him her name and date of birth and provide proof of insurance and registration. However, she was not able to find her driver's license.

4

Based on his training and observations, Officer Lynch believed that defendant "was highly intoxicated." He asked her where she had been and where she was headed; she responded that she was coming from a bar in Asbury Park that was open until 2:00 a.m., and she was headed home to Belmar. Officer Lynch also asked defendant if she had anything to drink that night and she admitted she had consumed two alcoholic beverages.

Officer Lynch removed the keys from defendant's car and had her perform three field sobriety tests: (1) reciting the alphabet; (2) a "six-inches leg raise;" and (3) "nine heel-to-toe steps." Before conducting those tests, Officer Lynch made sure his mobile video recorder (MVR) in his patrol vehicle was activated. Defendant attempted the alphabet test twice. According to Officer Lynch, defendant only got as far as the letter "G" on her first attempt and as far as "H" on her second attempt; however, she sang the alphabet on both attempts even though she had been instructed not to do so.

Officer Lynch further observed that defendant "seemed very confused in a state of intoxication" and said he could "still smell the odor of alcohol coming off her person." He then had her attempt the six-inch leg-raise test. Officer Lynch provided her the instructions, and defendant stated she understood. According to Officer Lynch, defendant did not follow his instructions, swayed

5

back and forth, and lost her balance. Defendant tried again but was unable to complete the test successfully.

Officer Lynch moved on to the final field test, the heel-to-toe exercise. He explained to defendant to take nine heel-to-toe steps in a straight line and on the ninth step, turn around and take nine heel-to-toe steps back the other way. Officer Lynch then partially demonstrated the test, taking six heel-to-toe steps, but he made it clear to defendant she was required to take nine heel-to-toe steps. Defendant took seven steps in one direction, none of which were heel-to-toe, and turned around. She then took eight steps back, none of which were heel-to-toe. During the test, defendant had her arms out for balance.

As a result of his interactions with defendant and her inability to successfully complete the field sobriety tests he administered, Officer Lynch concluded that defendant was intoxicated, placed her under arrest, and read her her Miranda[1] rights. Officer Lynch then transported defendant to the Neptune Township Police Department building because Avon did not do its own booking and did not have its own Alcotest machine. Officer Lynch said that during the drive to the Neptune station, his police vehicle had an overwhelming smell of

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2286-21

alcohol, "which was not in [his] car prior to putting [defendant] inside that vehicle."

Upon arriving at the Neptune station, Officer Lynch allowed defendant to use the bathroom.  He then observed defendant for twenty-four minutes, four minutes longer than the required twenty-minute observation period.  This was completed at 4:00 a.m.  During the observation period, Officer Lynch read defendant her Miranda rights again and also read her the State's general standard statement for blood alcohol breath tests.

At the conclusion of the observation period, Officer Lynch escorted defendant into the Alcotest room, at which time another officer, Lieutenant Christopher Garrity, Chief of the Avon Police Department, performed an Alcotest analysis of defendant's breath samples using Neptune's Alcotest machine.

On cross-examination, Officer Lynch acknowledged that he was not certified by the National Highway Traffic Safety Administration (NHSTA) to perform the standardized field sobriety tests.  At the conclusion of Officer Lynch's testimony, the prosecutor introduced a DVD recording of the dashcam MVR from Officer Lynch's patrol vehicle that recorded his interactions with defendant during the stop, as well as defendant's completion of the sobriety tests.

Defendant's trial resumed on April 13, 2021, at which time Chief Garrity was called as a second prosecution witness. Chief Garrity identified his Alcotest certification which was admitted into evidence without objection.

Chief Garrity testified that beginning at 4:09 a.m. on February 29, 2020, he had conducted the Alcotest analysis of defendant's breath samples. He explained that before administering the test, he read defendant the Alcotest instructions "word for word" and testified that she seemed to understand the instructions. Defendant provided an insufficient breath sample during the first attempted test, so Chief Garrity installed a new mouthpiece and performed two additional tests. Defendant provided satisfactory breath samples and the results demonstrated that her blood alcohol content (BAC) was 0.18 percent. Chief Garrity testified that he used the Alcotest calculator to determine that those two tests were within acceptable tolerance to establish the reliability of those results.

Chief Garrity also identified for the court the Alcohol Influence Report, which contained the results of defendant's two satisfactory breath samples.

On cross-examination, defense counsel asked Chief Garrity only one question: whether he was "trained in the NHTSA field sobriety tests." Chief Garrity responded that he was not.

A-2286-21

The municipal prosecutor sought to move into evidence various exhibits, which he described as the Neptune Alcotest "foundational documents."[2] Defense counsel objected, arguing the foundational documents had not been properly authenticated as admissible business records by a suitable witness from the Neptune Police Department.

In response, the municipal prosecutor argued the exhibits were admissible as business records maintained by the Neptune Police Department. The prosecutor represented to the court that he was "specifically told, just so the record is clear, in case this goes anywhere on appeal, that the Neptune Township police officer, Neptune Township discovery officer, would not appear to testify as to the business records admissibility of it." The municipal judge responded: "Just so I'm clear, the State has reached out to [the] Neptune Township business records person, [who] told you they would not appear in regards to that, correct?" The prosecutor responded, "That is correct."

---

[2] As the Supreme Court discussed in State v. Chun, 194 N.J. 54, 148 (2008), these "foundational documents" are required to lay an adequate foundation for the Alcotest results because they could "reveal some possible flaw in the operation of the particular device" and "establish the good working order of the device." The Court held that the foundational documents and the Alcohol Influence Report are not testimonial for purposes of the Confrontation Clause. Id. at 143, 147.

A-2286-21

Based on these circumstances, the municipal judge granted defense counsel's motion and suppressed the Alcotest evidence, including the results of the tests and the foundational documents. Notably, the State did not move for leave to appeal that interlocutory adverse evidentiary ruling to the Law Division pursuant to Rule 3:24(a). The State also did not seek a stay of the completion of the municipal case pending such an appeal.

After the State rested, defense counsel asked for a continuance for time to consider whether to call an expert as to the validity and sufficiency of the field sobriety tests. The court granted the continuance. The State did not attempt to take advantage of that interval by filing an interlocutory appeal concerning the excluded Alcotest results.

Defendant's trial resumed on May 11, 2021, at which time defendant rested without testifying or calling an expert witness. Defendant then moved for a directed verdict, which was denied.

Both defense counsel and the prosecutor presented summations, but the judge reserved decision because he had not yet viewed the MVR of defendant's stop.

On August 24, 2021, the municipal judge read his oral decision into the record. Finding defendant guilty of DWI, the judge stated: "My review of the

video clearly show[ed] that the defendant was under the influence of alcohol at the time. The tests given do show that the defendant clearly was intoxicated beyond a reasonable doubt . . . [.]"

The judge sentenced defendant to pay various fines and also ordered an interlock device be placed on defendant's vehicle for three months. Defendant's license was suspended only until the interlock device was placed on her vehicle. The summons for failure to exhibit a driver's license, N.J.S.A. 39:3-29, merged with the DWI conviction, and the charge for careless driving, N.J.S.A. 39:4-97, was dismissed. A judgment of conviction memorializing these terms was apparently issued.[3]

Defendant appealed her DWI conviction to the Law Division, pursuant to Rule 3:23-2, challenging the sufficiency of the evidence establishing her guilt of DWI. The State opposed the municipal appeal, but it did not cross-appeal the municipal judge's evidentiary ruling that had excluded the Alcotest results.

The Law Division conducted a trial, de novo, on February 1, 2022, which consisted of briefing and oral argument by counsel. The following day, the Law Division issued an order and written opinion. Among other things, the Law

---

[3] The parties have not furnished a copy of the municipal judgment of conviction in the appendix, but it is undisputed that such a judgment was issued and that defendant appealed it to the Law Division.

Division concluded that the State had established defendant's guilt on the DWI charge:

> A thorough review of the transcripts and the MVR video demonstrates that the State has proven defendant's guilt beyond a reasonable doubt. [Officer] Lynch pulled defendant's car over at 2:45 a.m. after observing her driving at a high rate of speed; he detected a strong odor of alcohol coming from defendant's car and he continued to smell alcohol after defendant was placed in his police vehicle; defendant definitively failed three field sobriety tests, was slow in her movements, and admitted to drinking earlier that evening. The State has presented sufficient evidence of defendant's guilt to sustain an observational conviction of DWI.

Although the State neither cross-appealed to the Law Division, nor sought interlocutory leave to appeal during the municipal trial, the Law Division proceeded, sua sponte, to review the municipal court's ruling suppressing the Alcotest evidence. The Law Division expressed concerns about the municipal prosecutor's assertion that "he could not authenticate the foundational documents without a 'business records' witness from Neptune and that Neptune had refused to make such a witness available."

The Law Division then reviewed the suppressed Alcotest documents, and concluded those exhibits should have been admitted in the municipal court trial under the business records exception to the hearsay rule, N.J.R.E. 803(c)(6).

12 <span>A-2286-21</span>

Because admission and consideration of the Alcotest evidence would require the imposition of "a mandatory four-month license suspension, a sentence greater than that imposed by the municipal judge[,]" the Law Division believed it had been placed "between the Scylla of imposing a mandated sentence and the Chrybdis of running afoul of the DeBonis policy."[4] Consequently, the Law Division fashioned the following remedy, albeit one the State had not requested:

> [T]his matter will be remanded to the municipal court with the direction to reconsider the State's motion to admit the foundational documents consistent with the findings in this court's opinion. If the judge finds they are not admissible without additional testimony, the State will be permitted to re-open the trial for the purpose of calling a witness to authenticate the foundational documents.

Defendant filed a timely motion for reconsideration of the remand order, arguing the Law Division's remand order unfairly and unconstitutionally exposed him to a harsher sentence.

On February 17, 2022, the Law Division denied defendant's motion for reconsideration, concluding the cases cited by defendant were distinguishable. The court elaborated:

> [D]efendant benefitted from an erroneous evidentiary ruling by the municipal court, which is conceded by the State, and seeks to prevent a remand which would

---

[4] We discuss the holding in DeBonis, infra.

correct the mistake and result in the appropriate mandated penalty. But for an arguably anachronistic policy, dating back 50 years when some municipal judges were not even admitted to the bar, [State v. DeBonis, 58 N.J. 182 (1971)], this court would have considered the Alcotest evidence at the trial de novo and imposed the appropriate sentence.

The Law Division determined that the remand was permitted by Rule 3:23-8(a), which allowed "the record to be supplemented for the limited purpose of correcting a legal error in the proceeding below." The court reasoned: "While the State is not permitted to correct substantive failures of proof on remand, the decision by the municipal judge to suppress the Alcotest results was a trial error and not a failure of proof. Clearly, the State is permitted to correct trial errors on remand."

The State timely filed a motion for a stay and interlocutory review of the Law Division's remand order, which we granted. On June 20, 2022, the Law Division submitted an amplified written opinion pursuant to Rule 2:5-1(b).

Aligned with defendant on appeal, the State argues in its brief that the Law Division's remand to the municipal court directing the reopening of the case was improvident. Although such a remand theoretically could be to its litigation advantage, the State acknowledges that exposing defendant to a potential greater sentence on remand violates DeBonis and other case law "that protects a

defendant from the risks of being penalized for filing an appeal." The State further doubts the constitutionality of such a remand, asserting "[i]t is without question that the State could not have filed an appeal of the municipal court's evidentiary ruling following entry of defendant's conviction as such an action would clearly violate double jeopardy protections." Defendant endorses these arguments.

II.

Rule 3:23-2 authorizes a defendant, but not the State, to appeal to the Law Division a judgment of conviction entered by the municipal court. That Rule also authorizes a defendant, or the State, to appeal to the Law Division "if aggrieved by a final post-judgment order" entered by such a municipal court of limited jurisdiction." R. 3:23-2. And, as we noted above, Rule 3:24(a) provides an avenue for the State or a defendant to seek leave from the Law Division to appeal an interlocutory order issued by the municipal court:

> (a) Either the prosecuting attorney or the defendant may seek leave to appeal to the Superior Court, Law Division from an interlocutory order entered before trial by a court of limited criminal jurisdiction.

Rule 3:24(b) does provide a limited expansion of the appellate jurisdiction available to the State, solely with respect to a municipal court's order dismissing a complaint or, as here, suppressing evidence:

(b) The prosecuting attorney <u>may</u> appeal, as of right, a pre-trial or post-trial judgment dismissing a complaint and, notwithstanding the provisions of paragraph (a), an order suppressing evidence entered in a court of limited criminal jurisdiction.

[(Emphasis added).]

A discretionary appeal by the State of an order suppressing the prosecution's evidence must be filed within thirty days of the municipal court's suppression order. <u>R.</u> 3:24(c).

Additionally, subsection (d) of <u>Rule</u> 3:24 dictates how the Law Division shall conduct its review of an appeal by the State of a municipal court's suppression order:

(d) <u>On appeal by the State from the grant of a motion to suppress</u> the matter <u>shall be tried de novo on the record</u>. In cases in which the Attorney General or county prosecutor did not appear in the municipal court, <u>the State shall be permitted to supplement the record</u> and to present any evidence or testimony concerning the legality of the contested search and seizure. The defendant shall be permitted to offer related evidence in opposition to the supplementary evidence offered by the State.

[(Emphasis added).]

Here, as we underscored in our Introduction and Part I, the State did not appeal the municipal court's ruling that suppressed the Alcotest evidence. Nor

did the State ask to supplement the record in the Law Division to show that the municipal court erred in suppressing that proof.

Because the State did not invoke the Law Division's appellate review powers in accordance with Rule 3:24, the question of whether the municipal court properly excluded the evidence was not within the Law Division's jurisdiction. Hence, the Law Division exceeded its authority in reviewing the suppression order, sua sponte.[5]

We further agree with both parties that the Law Division's remand order transgressed the Supreme Court's holding in DeBonis, 58 N.J. at 188. In DeBonis, a defendant convicted of an offense in the municipal court appealed his sentence to the County Court, a precursor to the present Law Division. Id. at 185. The County Court imposed a more severe sentence. Ibid. On appeal, the Supreme Court ruled that "as a matter of policy and apart from constitutional compulsion, a defendant who appeals from a municipal court should not risk a greater sentence." Id. at 188. The Court recognized the need "to afford the

_____

[5] We do not agree with the Law Division's premise that it was authorized in the present setting under Rule 3:23-8(a)(2) to "permit the [municipal court] record to be supplemented for the limited purpose of correcting a legal error in the proceedings below." That provision logically applies to situations in which an appellant has argued there was "legal error" committed by the municipal court and seeks relief from that error. In this case, the State did not file such a municipal appeal claiming any errors.

litigant [in a municipal court proceeding], frequently a stranger to the locality, the opportunity to seek a redetermination by a court at a higher level without the risk of a larger penalty." Id. at 189.

In State v. Kashi, 180 N.J. 45, 49 (2004), the Court, citing DeBonis, took the opportunity "to reaffirm [its] prior policy decision that a defendant convicted and sentenced in a municipal court may not be subjected to a greater sentence on appeal." See also State v. Eckert, 410 N.J. Super. 389, 406-07 (App. Div. 2009) (citing and applying this same principle from DeBonis); State v. Duthie, 200 N.J. Super. 19, 26 (App. Div. 1985) (same).

Here, in its written opinion, the Law Division specifically acknowledged that even if it could consider the Alcotest evidence supporting a per se DWI offense, DeBonis prevented it from imposing a greater sentence than the one imposed on defendant by the municipal court:

> Because defendant's blood alcohol concentration was higher than 0.15%, finding her guilty under the per se theory would require this court to impose a mandatory four-month license suspension, a sentence greater tha[n] that imposed by the municipal judge. Placed squarely in issue is the applicability of the Supreme Court's decision in State v. DeBonis, 58 N.J. 182 (1971), which held that a defendant convicted and sentenced in a municipal court may not be subjected to a greater sentence on appeal.
>
> . . .

> The substantively unchallenged Alcotest evidence requires a four-month suspension of defendant's license; DeBonis prevents this court from imposing this sentence.

The Law Division attempted to forestall the consequences of DeBonis and its progeny by remanding the matter to the municipal court, in anticipation that the municipal court would reopen the case, admit the Alcotest evidence, and find defendant guilty of a more serious offense. With all due respect to the Law Division, such an unrequested remedy is inconsistent with the policies of DeBonis. It would, in effect, penalize defendant for appealing her judgment of conviction. We are constrained by DeBonis from approving that course of action.

We do not read the cases relied upon by the Law Division to support the remand order. In particular, State v. Kashi, 360 N.J. Super. 538 (App. Div. 2003), aff'd, 180 N.J. 45 (2004), is not on point because it concerned a situation in which the State relied on appeal on incriminating evidence of field observations that had been admitted into evidence at the municipal trial. Here, as we have discussed, the Alcotest results were not admitted into evidence and the State did not appeal that exclusion. Nor does State v. Sisti, 209 N.J. Super. 148 (App. Div. 1986), justify the remand in this case because the incriminating

evidence relied on by the Law Division as an alternative basis of guilt was not, as here, excluded at the municipal trial. The circumstances in the present case are not comparable to those in Kashi or Sisti.

In light of our disposition, we need not reach the constitutional double jeopardy arguments presented. See Randolph Town Ctr. L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) (reciting the well-established principle that courts should not reach constitutional issues unless it is "imperative" to do so). Nor do we need to comment on whether the municipal prosecutor was remiss with respect to the circumstances that led the court to exclude the Alcotest documents, since that exclusion was never appealed.[6]

Affirmed in part as to the finding of defendant's guilt, vacated in part as to the remand to the municipal court, and remanded to the Law Division for sentencing limited by the principles of DeBonis.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] At oral argument, the assistant prosecutor represented to this court that, in light of the Law Division's concerns about the foundational documents, the County Prosecutor's Office reviewed the municipal prosecutor's handling of this matter and concluded that no further action was warranted. As noted, we decline to comment on the substance of that topic. That said, we appreciate the Law Division's concerns and the public safety considerations at stake in the effective enforcement of our drunk driving laws.

A-2286-21